**Application of Frank S. BARKER and Willis G. Pehl.**

**Patent Appeal No. 76–659.**

United States Court of Customs and Patent Appeals.

July 21, 1977.

Rehearing Denied Sept. 15, 1977.

---

Robert W. Beach, Seattle, Wash., atty. of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Henry W. Tarring, II, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals (board) rejecting claim 18 in application serial No. 504,317, filed September 9, 1974, for "Prefabricated Shingle Panels." We affirm.

*The Invention*

Appellants' invention is a method of making prefabricated panels of wooden shingles. Their amended specification describes the invention as follows (all italicized material added by amendment; material deleted not shown):

> The theory of the *regular modular* panels shown in Figures 7 and 10 is that *they are constructed according to a type established for the present invention by their shingles being of different selected predetermined widths* to form a *predetermined series or* pattern which may repeat within a length of a panel, and which will repeat from panel to panel *because of such regularity.* The shingles used at corresponding locations in all panels will [sic] *are alike in width and the shingles in all the panels are arranged in a corresponding predetermined series as to width,* so that, if adjacent panels are offset by a predetermined amount, there will always be

assurance that all of the cracks *or joints* between adjacent shingles in adjacent courses will be out of *registration*.

Figs. 7 and 10 of appellants' application are as follows:

The specification continues:

In the panel shown in Figure 7 the shingles 14 are nominally four inches in width, the shingles 15 are nominally six inches in width and the shingles 16 are nominally eight inches in width. Each panel is shown as being forty-eight inches in length and as being composed *with* the shingles *arranged in the predetermined series or* pattern 14, 15, 16, 15, 14, 15, 16, 15. In other words the *shingles in the series have the* width pattern *of* 4″, 6″, 8″, 6″, 4″, 6″, 8″, 6″. These dimensions are nominal dimensions because it is preferred that the length of the panel be exactly forty-eight inches.

.    .    .    .    .

The panel of Figure 10 is fabricated from shingles 15 which are six inches in width, shingles 18 which are three inches in width, and shingles 19 which are nine inches in width. The *predetermined series of shingles is composed of the* repetitive shingle pattern in this instance of 18, 15, 19, 15, 18, 15, 19, 15, providing a shingle nominal width pattern of 3″, 6″, 9″, 6″, 3″, 6″, 9″, 6″.

Again, if shingle panels of the type shown in Figure 10 are assembled with the panels of adjacent courses offset lengthwise twelve inches, it will be found that each three-inch shingle 18 will be centered with respect to a nine-inch shin-

gle 19 in the adjacent course both above and below it. In this instance also if the rafters or studs are located twelve inches on center and the panels are four feet or eight feet in length, each joint between the adjacent ends of adjacent panels will overlie a stud or rafter. Alternatively, suitable connecting means may be provided to connect the adjacent ends of adjacent backing boards without having a bearing member beneath the joint in each instance.

Claim 18, the sole claim on appeal, was introduced by an amendment and is directed to the method of making such shingle panels:

18. The method of making substantially uniform, regular modular prefabricated shingle panels which comprises selecting individual wooden shingles of at least three different predetermined widths, each shingle having a tip portion and a butt portion and being tapered in thickness away from the butt portion toward the tip portion, selecting elongated backing boards all of substantially the same predetermined length and width, each backing board having a length at least as great as the aggregate width of *at least six shingles* and of a width less than one-half the length of a shingle, laying the selected shingles of different predetermined widths in only a single course in each of at least two repetitive identical series, each series including at least three different selected, predetermined widths along the length of each backing board with their lengths extending transversely to the length of such backing board, with their tip portions overlying the backing board and with their butt portions overhanging one edge of the backing board in free cantilever fashion without any underlayer for a distance at least as great as the width of the backing board and thereby forming substantially identical shingle arrangements in all panels with respect to such widths of the shingles, and securing the shingles to the backing boards in such arrangements only by their tip portions. [Emphasis supplied.]

## The Rejections

The rejections by the examiner were based on prior art and on double patenting and were reversed by the board. Acting pursuant to its authority under 37 CFR 1.196(b), it then entered three new rejections against claim 18: 35 U.S.C. § 112, first paragraph, "as being based on a specification that fails to contain a written description of the invention defined in this claim"; 35 U.S.C. § 112, first paragraph, "as being based on a specification that does not enable one of ordinary skill in the art to practice the claimed invention"; and 35 U.S.C. § 132 for "introducing new matter into the disclosure." (The board's opinion makes clear that "disclosure" includes the claim.) The board specifically pointed to the step in claim 18 that recites "selecting elongated backing boards . . . each backing board having a length at least as great as the aggregate width of at least *six* shingles" (board's emphasis) as the basis for the rejections.

On appellants' request for reconsideration, the board declined to withdraw any of the rejections. It noted that claim 18 does not have the status of an original claim and that the limitation of "at least six shingles" is outside the embodiments illustrated and described in the specification.

## OPINION

■ Appellants argue that the "enablement" requirement of the first paragraph of 35 U.S.C. § 112 cannot be read separately from the "description" requirement therein.[1] They would interpret the phrase in section 112 "in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same" as modifying "description"; thus, a sufficient description of the inven-tion for purposes of the statute would be a description that enables one skilled in the art to make and use the invention. We do not agree.

■ This court has clearly recognized that there is a description of the invention requirement in 35 U.S.C. § 112, first paragraph, separate and distinct from the enablement requirement. *In re Bowen*, 492 F.2d 859, 864, 181 USPQ 48, 52 (Cust. & Pat.App.1974); *In re Smith*, 481 F.2d 910, 914–15, 178 USPQ 620, 623–25 (Cust. & Pat.App.1973); *In re Moore*, 439 F.2d 1232, 1235, 58 CCPA 1042, 1047, 169 USPQ 236, 238–39 (1971). A specification may contain a disclosure that is sufficient to enable one skilled in the art to make and use the invention and yet fail to comply with the description of the invention requirement. *Fields v. Conover*, 443 F.2d 1386, 1391, 58 CCPA 1366, 1372, 170 USPQ 276, 280 (1971); *In re Ruschig*, 379 F.2d 990, 995–96, 54 CCPA 1551, 1558–59, 154 USPQ 118, 123 (1967).[2]

■ If, as urged by appellants, section 112, first paragraph reads—

The specification shall contain a written description of the invention . . . in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same . . . .

this would render superfluous the requirement that the specification contain a written description—

of the manner and process of making and using it [the invention] . . . . .

Obviously, if there were a description enabling "any person skilled in the art . . . to make and use," there would be no need to require a description of the "manner and process of making and using." As a princi-

---

1. 35 U.S.C. § 112, first paragraph, provides:

    The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . . .

2. The above-cited cases completely answer the dissenting opinion's concern over exalting "form over substance" and its statement (with no citation of authority) that it cannot be seen how one may, in "full, clear, concise and exact terms," enable the skilled to practice an invention, and still have failed to "describe" it.

ple of statutory construction, it is presumed that Congress did not use superfluous words.[3] No evidence has been offered to rebut that presumption in this case.

Commencing with our first patent statute, there have been *separate requirements* for a description of the invention and a description of how to make and use it. Section 2 of the Patent Act of 1790, ch. 7, 1 Stat. 109, 110, required the grantee of a patent to—

> deliver . . . a specification in writing, containing a description . . . of the thing or things . . . invented or discovered . . . which specification shall be so particular . . . as *not only* to distinguish the invention or discovery from other things before known and used, *but also* to enable a workman or other person skilled in the art . . to make, construct or use the same . . . . [Emphasis supplied.]

Section 3 of the Patent Act of 1793, ch. 11, 1 Stat. 318, 321, required that every inventor—

> deliver a written description of his invention, *and* of the manner of using, or process of compounding the same, in such full, clear, and exact terms, as to distinguish the same from all other things before known, *and* to enable any person skilled in the art or science . . . to

make, compound, and use the same. . . .[4] [Emphasis supplied.]

Section 6 of the Patent Act of 1836, ch. 357, 5 Stat. 117, 119, provided that an inventor—

> shall deliver [to the Patent Office] a written description of his invention or discovery, *and* of the manner and process of making, constructing, using, and compounding the same, in such full, clear, and exact terms, avoiding unnecessary prolixity, as to enable any person skilled in the art or science to which it appertains . . . to make, construct, compound, and use the same . . . . [Emphasis supplied.]

See Phillips, *The Law of Patents For Inventions* 233 (1837), quoted in *In re Nelson,* 280 F.2d 172, 181, 47 CCPA 1031, 1044, 126 USPQ 242, 250–51 (1960). Section 26 of the Patent Act of 1870, ch. 230, 16 Stat. 198, 201, required that an inventor—

> shall file in the patent office a written description of the [invention], *and* of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains . . . to make, construct, compound, and use the same . . . .[5] [Emphasis supplied.]

---

3. *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' "); *Platt v. Union Pacific R.R.,* 99 U.S. 48, 58, 25 L.Ed. 424 (1878) ("But the admitted rules of statutory construction declare that a legislature is presumed to have used no superfluous words. Courts are to accord a meaning, if possible, to every word in a statute."); *In re Finch,* 535 F.2d 70, 71, 190 USPQ 64, 65 (Cust. & Pat.App. 1976) ("The repetition in 35 U.S.C. § 171 of 'whoever invents,' 'any new,' and 'may obtain . . . title' would have been superfluous if the criteria of 35 U.S.C. § 101 in their entirety were applicable to designs. We cannot assume that Congress did a useless think in deleting 'useful' when it legislated with respect to designs.")

4. The Supreme Court, in *Evans v. Eaton,* 20 U.S. (7 Wheat.) 161, 5 L.Ed. 472 (1822), interpreted this section of the statute as having two purposes: (1) to make known the manner of constructing the invention in order to enable

artisans to make and use it, and (2) to put the public in possession of what the party claims as his own invention in order to ascertain whether he claims anything in common use, or already known, and to protect the public from an inventor "pretending that his invention is more than what it really is, or different from its ostensible objects . . . ." *Id.* at 196. (The 1793 Act did not require claims.) This court has recognized that the "essential goal" of the description of the invention requirement is to clearly convey the information that an applicant has invented the subject matter which is claimed. *In re Smith, supra* at 914, 178 USPQ at 624; *In re Ruschig, supra* 379 F.2d at 996, 54 CCPA at 1559, 154 USPQ at 123 (1967). Whether that goal and the statutory requirement implementing it should be continued is, of course, a matter for the Congress to decide.

5. In discussing the description of the invention requirement of section 26 in a case involving a reissue patent for a machine being a combination of three elements (the original patent being

Essentially the same language has been carried over into the present statute.

■ Accordingly, we reaffirm our recognition that 35 U.S.C. § 112, first paragraph, contains separate requirements for—

a written description [1] of the invention, and [2] of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same . . . .[6]

■ Appellants do not contend that the step of selecting a backing board having a length equal to the width of at least six shingles is explicitly disclosed. However, they argue that, "[i]f a person skilled in the art *wanted* to provide a backing board and panel 48 inches in length with a repetitive pattern having *only* six shingles of three different widths, it would be obvious" how to do so. The fatal flaw in this argument is that motivation and enablement are not the issues; description of the invention is. As this court stated in In re Winkhaus, supra at 640, 188 USPQ at 131:

That a person skilled in the art might realize from reading the disclosure that such a step is *possible* is not a sufficient indication to that person that that step is part of appellants' invention. Such an

indication is the least that is required for a description of the invention under the first paragraph of § 112. See In re Smythe, 480 F.2d 1376, 178 USPQ 279 (Cust. & Pat.App.1973). Claims added by amendment and drawn to an invention not so described in the specification are drawn to "new matter" and prohibited by § 132.

We can find no indication in the specification or claims as originally filed that appellants invented the subject matter now claimed, particularly the step of "selecting elongated backing boards . . . each backing board having a length at least as great as the aggregate width of *at least six shingles.*" (Emphasis supplied.) See In re Smythe, supra. The excerpts from the specification, *supra,* and the drawing figures indicate that appellants contemplated backing boards of four and eight foot lengths having a repetitive series of eight or sixteen shingles thereon. Thus, the limitation "at least six shingles" in the claim is not supported by the description of the invention in the specification or drawings and also constitutes new matter.

In view of the foregoing, the rejections of claim 18 under the description requirement of the first paragraph of 35 U.S.C. § 112 and for new matter under 35 U.S.C. § 132

---

to a combination of four elements), the Supreme Court in Gill v. Wells, 89 U.S. (22 Wall.) 1, 22 L.Ed. 699 (1874), stated:

Even a glance at the original specification is sufficient to show that it does not contain any description whatever of the plate, deflector, or side guides mentioned in the specification of the reissued patent, nor is it pretended that if the several devices named had been described in the original specification the description of these several devices would have been a good description of the chamber or tunnel and its appendages which are embraced in the invention secured by that patent . . . . [Id. at 27.]

See also, 2 W. Robinson, The Law of Patents § 484, at 73 (1890), where the author states:

According to the statutes, the Description must contain full explanations of three different subjects: the invention itself; the manner of making it; and the mode of putting it to practical use,—a complete knowledge upon all these points being necessary to render the

invention available to the public without further experiment or exercise of inventive skill.

6. Contrary to the dissenting opinion, the separate description of the invention requirement is not a mere "judicial (and unnecessary) response to chemical cases." It is a *statutory* requirement duly *recognized* by the courts— and not only in chemical cases. Evans v. Eaton and Gill v. Wells, both supra; In re Mott, 539 F.2d 1291, 190 USPQ 536 (Cust. & Pat.App. 1976); In re Winkhaus, 527 F.2d 637, 188 USPQ 129 (Cust. & Pat.App.1975). The dissenting opinion's citation to In re Fisher, 427 F.2d 833, 57 CCPA 1099, 166 USPQ 18 (1970) is inapposite, that case having involved the scope of enablement and not the description of the invention requirement. Further, contrary to the suggestion in the dissenting opinion, the patent code does not prescribe a different standard between "complex" and "simple" cases; nor does this court apply different standards in such cases. In re Arkley, 455 F.2d 586, 59 CCPA 804, 172 USPQ 524 (1972).

are *affirmed*. Thus, we need not reach the enablement issue.

AFFIRMED.

BALDWIN, J., dissents.

RICH, Judge, concurring.

I agree with the result reached by the majority but, for a relatively uncomplicated case, the opinion unduly complicates matters.

The basic problem here is simple: new matter, in violation of 35 U.S.C. § 132, was inserted by amendment and the claim contains that new matter. It therefore lacks support and must be rejected. The decision is in accord with many of our prior interpretations of 35 U.S.C. § 112 and there is no need to justify it by extensive review of the evolution since 1790 of the language of § 112, first paragraph.

Considering the evolutionary history of the language of § 112, I do not subscribe to its interpretation through assumptions based on presumptions about usage of superfluous words and the like. The words are of ancient lineage and, in spite of the fact they are inappropriate to some situations, they were preserved, in writing the Patent Act of 1952, because they were familiar and had many times been construed. Some simplifications and clarifications were made, but the classic phrases were retained without regard to "superfluous words." Mere reading of the successive statutes quoted by the majority shows that the words of § 112 derive from an era when it was the habit of the legal fraternity to indulge in redundancies.

Particularly irrelevant, in my view, is any discussion of the wording of 35 U.S.C. § 171 on designs, discussed by the majority in footnote 3.

While the majority opinion states, in footnote 6, that, in applying the statute, we have but a single standard for simple and complex cases, the fact is that different fact situations demand different treatment. *In re Nelson*, 280 F.2d 172, 184, 47 CCPA 1031, 1048, 126 USPQ 242, 253 (1960). Attention must be paid to the key words "such" and "as to" in the phrase "such full, clear, concise, and exact terms as to enable," which compel case-by-case treatment of issues of the sufficiency of description and enablement which, I agree, are distinct though commingled requirements.

MARKEY, Chief Judge, dissenting.

I respectfully, but heartily, dissent.

The board, on reconsideration, said, "we did not, in our first rejection of claim 18, indicate that there was lack of enablement or that one having ordinary skill in the art could not practice the invention, rather we dealt with only that part of the statute directed to the description."

How incongruous. How exaltive of form over substance. How illustrative of stare decisis rampant. The board is saying that it doesn't *matter* that one discloses an invention in such "clear, concise and exact terms" (enablement) as to enable its practice, the very purpose and quid pro quo of the patent system from its inception.

The attempt to create historical and current statutory support for a "separate description" requirement, which was solely a judicial (and unnecessary) response to chemical cases in which appellants were arguing that those skilled in the art "might" make and use a claimed invention, is mistaken.

There is no surplusage in saying, as the Congress in effect did, " * * * a written description of the invention * * * in such full, clear, concise, and exact terms as to enable," and "[a written description] of the manner and process of making and using it in such full, clear, concise, and exact terms as to enable * * *." On the contrary, Congress *saved* words by specifying, in a single prepositional phrase, that the description of the invention, and the description of the manner of making and using it, shall *both* be in "such full, clear, concise, and exact terms as to enable." Section 112, first paragraph, is a simple sentence, with a comma after "it," making the phrase "in such full * * * the same" a modifier of both objects of the

verb "contain." All before that comma prescribes *what* shall be described. The phrase following the comma prescribes *how* and for *whom* it shall be described.

We should not hesitate to recognize that it would have been better if the court had held, in certain past chemical cases, that whatever "enablement" was present, it was not in "full, clear, concise and exact terms," rather than to have created a "separate description" gloss. We certainly should not hesitate to do so when the court finds its creation being bent out of shape, as here.

An illustration of the superfluousness of a separate "description" requirement lies in the board's use of the same alleged defect as the foundation for *three* rejections.

To employ the judicially-created "separate description" requirement, developed in complex chemical cases, to this simplest of mechanical inventions is to disregard all that Judge Lane said for the court in *In re Fisher*, 427 F.2d 833, 839, 57 CCPA 1099, 1108, 166 USPQ 18, 24 (1970).

Contrary to the board's view, the number of shingles is not critical. Appellants' original claim 1 specified merely "a course of shingles." There is no rejection of the claim as open-ended. Appellants' shingles are disclosed as being of varying widths. Whatever the width and number of shingles available, every carpenter would use enough to cover the hole! Claim 18 just says that there is no infringement if less than six shingles are used.

I cannot see how one may, in "full, clear, concise and exact terms," enable the skilled to practice an invention, and still have failed to "describe" it.

Appellant disclosed eight shingles. I can't escape the view that eight includes "at least 6."