# United States Court of Appeals for the Federal Circuit

05-1062

LIZARDTECH, INC.,

Plaintiff-Appellant,

v.

EARTH RESOURCE MAPPING, INC. and
EARTH RESOURCE MAPPING PTY LTD. (now Earth Resource Mapping Ltd.),

Defendants-Appellees.

Philip P. Mann, Mann Law Group, of Seattle, Washington, argued for plaintiff-appellant.  Of counsel on the brief were Robert J. Carlson and Kevan L. Morgan, Christensen O'Connor Johnson & Kindness PLLC, of Seattle, Washington.

Stewart M. Brown, DLA Piper Rudnick Gray Cary US LLP, of San Diego, California, argued for defendants-appellees.  With him on the brief was Richard T. Mulloy.

Appealed from:  United States District Court for the Western District of Washington

Judge John C. Coughenour

# United States Court of Appeals for the Federal Circuit

05-1062

LIZARDTECH, INC.,

Plaintiff-Appellant,

and

REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Plaintiff,

v.

EARTH RESOURCE MAPPING, INC. and
EARTH RESOURCE MAPPING PTY LTD. (now Earth Resource Mapping Ltd.),

Defendants-Appellees.

ON PETITION FOR REHEARING EN BANC

Before MICHEL, Chief Judge, NEWMAN, MAYER, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, Circuit Judges.

O R D E R

A petition for rehearing en banc was filed by the Appellant, and a response thereto was invited by the court and filed by the Appellees. The matter was first referred as a petition for rehearing to the panel that heard the appeal, and thereafter the petition for rehearing en banc and response were referred to the circuit judges who are authorized to request a poll whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)  The petition for rehearing en banc is denied.

(2)  The mandate of the court will issue on January 12, 2006.

LOURIE, <u>Circuit Judge</u>, with whom MICHEL, <u>Chief Judge</u>, and NEWMAN, <u>Circuit Judge</u>, join, concurs in a separate opinion.

RADER, <u>Circuit Judge</u>, with whom GAJARSA, <u>Circuit Judge</u>, joins, dissents in a separate opinion.

LINN, <u>Circuit Judge</u>, dissents.

FOR THE COURT

 Jan 5, 2006                                    s/Jan Horbaly
      Date                                         Jan Horbaly
                                                  Clerk

cc:    Philip P. Mann, Esq.
       Stewart M. Brown, Esq.

# United States Court of Appeals for the Federal Circuit

05-1062

LIZARDTECH, INC.,

Plaintiff-Appellant,

and

REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Plaintiff,

v.

EARTH RESOURCE MAPPING, INC. and
EARTH RESOURCE MAPPING PTY LTD. (now Earth Resource Mapping Ltd.),

Defendants-Appellees.

LOURIE, Circuit Judge, concurring, with whom MICHEL, Chief Judge, and NEWMAN, Circuit Judge, join.

I concur in the decision of the court not to rehear this case en banc.

Our case law has been quite consistent in holding that the patent law requires that a patent contain a written description of a claimed invention independent of the requirements to enable one skilled in the art to make and use the invention. See e.g., Invitrogen Corp. v. Clontech Labs., Inc., 429 F.3d 1052, 1071 n.17 (Fed. Cir. 2005) (stating that the "written description is distinct from the enablement requirement"); Capon v. Eshhar, 418 F.3d 1349, 1360 (Fed. Cir. 2005) ("although the legal criteria of enablement and written description are related and are often met by the same disclosure, they serve discrete legal requirements"); Chiron Corp. v. Genentech, Inc., 363 F.3d 1247, 1253 (Fed. Cir. 2004); Univ. of Rochester v. G.D. Searle & Co., Inc.,

358 F.3d 916, 920 (Fed. Cir. 2004); Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003); Enzo v. Biochem Inc. v. Gen-Probe, Inc., 323 F.3d 956, 963 (Fed. Cir. 2002); Regents of the Univ. of California v. Eli Lilly & Co., 119 F.3d 1559 (Fed. Cir. 1997); In re Ruschig, 379 F.3d 990 (C.C.P.A. 1967). That requirement is supported by the statute, policy, and practice.

The statute clearly sets forth that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112 (2000)) (emphasis added).  Both a written description and a disclosure of how to make and use the invention, as well as the best mode of carrying it out, are required by the statute.

The policy of the law also supports that interpretation.  The whole purpose of a patent specification is to disclose one's invention to the public.  It is the quid pro quo for the grant of the period of exclusivity.  The need to tell the public what the invention is, in addition to how to make and use it, is self-evident.  One should not be able to obtain a patent on what one has not disclosed to the public.

Finally, patent practitioners know that the first substantive portion of a patent specification (other than a brief summary and background) is a disclosure of what the claimed invention is.  No one writes a patent application by beginning with statements like "I make my invention as follows"" or "I use my invention in the following manner."  A patent specification always begins with a statement like "My invention consists of the

following," or its equivalent. Then there follows a fuller written description of what the invention is, whether it is a machine, an electronic device, a chemical compound (or, more usually, a group of compounds), or a genetic sequence (or sequences). Only then does one find material relating to enablement, telling how to make and use the invention.

Whatever inconsistencies may exist in the application of the law lie in the different fact situations with which the courts are faced. Compliance with the written description requirement has been held to be a question of fact, so what constitutes an adequate written description depends on what is claimed and what is described.

And, of course, claims may vary from the specification because they are usually amended during prosecution. However, in whatever form the claims are finally issued, they must be interpreted, in light of the written description, but not beyond it, because otherwise they would be interpreted to cover inventions or aspects of an invention that have not been disclosed. Claims are not necessarily limited to preferred embodiments, but, if there are no other embodiments, and no other disclosure, then they may be so limited. One does not receive entitlement to a period of exclusivity for what one has not disclosed to the public. (I do not here delve into problems of genus-species disclosure, as that is a more complex topic having its own subtleties.) But merely calling an embodiment "preferred," when there are no others, does not entitle one to claims broader than the disclosure.

It is said that the written description requirement is merely a means of "policing new matter violations." However, there is a separate new matter provision in the statute (35 U.S.C. § 132), and that provision is subsidiary to the basic requirement set forth in

05-1062                                         3

Section 112 to disclose one's invention. That statutory written description requirement is basic to the patent system and it is in no way limited to "policing new matter violations" or resolving priority disputes.

In the final analysis, the law is clear and consistent, and this court has at least twice declined to hear a written description case en banc. See Enzo Biochem, Inc. v. Gen-Probe, Inc., 323 F.3d 956, 970 (Fed. Cir. 2002); Univ. of Rochester v. G.D. Searle & Co., Inc., 375 F.3d 1303 (Fed. Cir. 2004). Whether or not there may have been votes to hear such a case en banc for the purpose of having an en banc holding on the issue, rather than just a line of panel opinions, consistent though they may be, there have been very few outright votes to go en banc to reverse our holdings. Thus, there is no reason for our court to hear this case en banc, and I concur in the court's decision to decline to do so.

# United States Court of Appeals for the Federal Circuit

05-1062

LIZARDTECH, INC.,

Plaintiff-Appellant,

and

REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Plaintiff,

v.

EARTH RESOURCE MAPPING, INC., and
EARTH RESOURCE MAPPING PTY LTD. (now Earth Resource Mapping Ltd.),

Defendants-Appellees.

RADER, <u>Circuit Judge</u>, with whom GAJARSA, <u>Circuit Judge</u>, joins, dissenting from the order denying rehearing <u>en banc</u>.

This court's written description jurisprudence has become opaque to the point of obscuring other areas of this court's law. For example, "[t]wo cases whose juxtaposition presents a puzzle" are <u>Lizardtech, Inc. v. Earth Resource Mapping, Inc.</u>, 424 F.3d 1336 (Fed. Cir. 2005) and <u>JVW Enterprises, Inc. v. Interact Accessories</u>, 424 F.3d 1324 (Fed. Cir. 2005). <u>See</u> John L. Rogitz, <u>CAFC Happenings</u>, Intellectual Property Today, November, 2005, at 32. Despite their similarities, the outcomes in <u>Lizardtech</u> and <u>JVW</u> are strikingly different. In <u>Lizardtech</u>, this court invalidates claims that are broader than the disclosed embodiments because "[t]here is no evidence that the specification contemplates a more generic way" of performing the claimed invention. <u>Lizardtech</u>, 424

F.3d at 1344. Meanwhile, in JVW, this court determines that the claims are properly construed as broader than the disclosed embodiments because "the patentee did not intend for the claims and the embodiments disclosed in the specification to be coextensive." JVW, 424 F.3d at 1335. In both cases, the claims encompass more than the specification expressly describes. In Lizardtech, this court says that a claim scope in excess of the specification's embodiments invalidates the claim. In JVM, this court says that a claim scope in excess of the specification's embodiments grants a broader range of infringement. The facts are very similar, the results are not.

To expand on the dichotomy in this recent case law, both Lizardtech and JVW confront an issue common to many patent disputes: claims that are broader than the disclosed embodiments. See Lizardtech, 424 F.3d at 1344; JVW, 424 F.3d at 1324. Neither opinion involves biotechnology or chemistry, Lizardtech involves image compression and JVW involves video game controllers. Neither opinion discusses the issue of complexity or uncertainty in the art, a frequent characteristic of claims invalidated on written description grounds. See Capon v. Eshhar, 418 F.3d 1349, 1358 (Fed. Cir. 2005) ("It is well recognized that in the 'unpredictable' fields of science, it is appropriate to recognize the variability in the science in determining the scope of the coverage to which the inventor is entitled.") (citing Enzo Biochem, Inc. v. Gen-Probe, Inc., 296 F.3d 1316, 1327-28 (Fed. Cir. 2002); Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1569 (Fed. Cir. 1997), In re Gosteli, 872 F.2d 1008, 1012 (Fed. Cir. 1989); In re Smith, 458 F.2d 1389, 1394-95 (CCPA 1972); and In re Grimme, 274 F.2d 949, 952 (CCPA 1960)). Because those similarities stand in stark contrast to the

2

disparate outcomes in <u>Lizardtech</u> and <u>JVW</u>, these next-door neighbors in West's Federal Reporter must leave practitioners in a quandary.

On the one hand, according to <u>Lizardtech</u>, claims should not be broader than the disclosed embodiments unless the specification suggests the invention is broader than those embodiments. Logically, that creates a presumption: claims must be commensurate in scope with the preferred embodiments absent language suggesting otherwise. On the other hand, according to <u>JVW</u>, claims should not be narrowed to the preferred embodiments unless the specification suggests the inventor intended such narrow coverage. Logically, that creates a different presumption: claims need not be commensurate in scope with the preferred embodiments absent language suggesting otherwise. Of course, the unsatisfying solution to the puzzle is simple: while <u>JVW</u> considered principles of claim construction in light of this court's recent <u>en</u> <u>banc</u> clarification of claim construction, <u>see</u> <u>JVW</u>, 424 F.3d at 1335 (citing <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc)), <u>Lizardtech</u> dealt with this court's evolving  written description doctrine.[1]

---

[1]     Before engaging in its written description analysis, <u>Lizardtech</u> also construed the claims at issue. <u>See</u> <u>Lizardtech</u>, 424 F.3d at 1343. Specifically, this court construed claim 21 as limited to seamless discrete wavelet transformation (DWT) despite the absence of the term "seamless" in that claim. <u>Id.</u> at 1344. The court then used claim 21, as construed, as a baseline for analyzing written description. That written description analysis focused on the breadth of claim 21, which is not limited to a seamless DWT with its step of "maintain[ing] updated sums," in light of Lizardtech's specification, which includes only one method of seamless DWT, i.e., one that includes maintaining updated sums. <u>Id.</u>
        Of course, this analysis only proves that the written description invalidity doctrine is really a claim construction invalidity doctrine. If the claims are construed as confined to the embodiments in the specification, written description invalidity does not come into play. If the claims, on the other hand, are construed to embrace more than the specification, this court (on only some occasions and without a clear standard to determine those occasions in advance) will invalidate.

As cited by JVW, Phillips clarified claim construction, and in the process discussed the situation of specific embodiments coupled with broad claims:

> [A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. See, e.g., Nazomi Communications, Inc. v. ARM Holdings, PLC, 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); [Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906-08 (Fed. Cir. 2004)]; [Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002)]; SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121 (Fed. Cir. 1985). In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. [Gemstar-TV Guide v. Int'l Trade Comm'n, 383 F.3d 1352, 1366 (Fed. Cir. 2004)] . . . .
>
> To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. See Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1533 (Fed. Cir. 1987).

Indeed, in Phillips itself, this court gave the broad claim term "baffle" a meaning beyond the narrower bullet-deflecting embodiments in the specification. Phillips, 415 F.3d at 1326-27.

Phillips thus underscored that claim language governs and may exceed the scope of the specification's preferred embodiments. With that recent en banc rule in place, the written description analysis of Lizardtech is troubling, if not inexplicable. Patent owners and practitioners must struggle to resolve the tension between Phillips and cases like Lizardtech.

I.

4

Even absent the tension with <u>Phillips</u>, this court provides no neutral standard of application for its evolving written description doctrine. The ostensible standard for an adequate written description is that the specification must show "possession" of the claimed invention. Before 1997, the written description doctrine served only its original and important purpose of policing new matter violations. <u>Enzo Biochem, Inc. v. Gen-Probe Inc.</u>, 323 F.3d 956, 977-79 (Fed. Cir. 2002) (Rader, J., dissenting from denial of petition for rehearing en banc and explaining origins of the written description requirement). At that time, the "possession" test suggested both a methodology and standard for its application. <u>In re Ruschig</u>, 379 F.2d 990, 995-96 (CCPA 1967). Under the traditional written description doctrine, which was just another name for the new matter doctrine, <u>In re Rasmussen</u>, 650 F.2d 1212, 1214-15 (CCPA 1981), the "possession" test was easily applied. It compared an original filing with a later amendment. The "possession" test also provided a standard for this comparison, namely "if the original filing 'supported' or showed possession of the new matter at the time of the original filing" then no infraction had occurred. Under the traditional written description doctrine, possession was a real test with a real standard for compliance.

While this court purports to still apply its "possession" test, <u>Lizardtech</u>, 424 F.3d at 1345, it does so in a way not contemplated by the original test, i.e., by comparing separate parts of the same original disclosure. <u>Lizardtech</u>, 424 F.3d at 1344. The original test does not work in the new setting because, of course, every specification describes and defines the same thing, a single invention. <u>See</u> 35 U.S.C. § 112 ¶¶ 1, 2 ("The specification shall contain a written description of <u>the</u> invention" and "conclude with one or more claims particularly pointing out and distinctly claiming the subject

matter which the applicant regards as his invention.") (emphasis added); In re Goodman, 11 F.3d 1046, 1052 (Fed. Cir. 1993) ("[Under 35 U.S.C. § 101,] an inventor is entitled to a single patent for an invention."). Thus, by definition, both parts of the same specification show possession of the same thing, the invention. For that reason, this court's predecessor explained in In re Gardner that the traditional written description doctrine could be satisfied by any part of the original disclosure – the claims or the rest of the specification. 475 F.2d 1389, 1391 (CCPA 1973). In 1997, when this court strayed from the statute and modified the written description requirement, it created the present confusion.

In Regents of the University of California v. Eli Lilly & Company, 119 F.3d 1559 (Fed. Cir. 1997), this court purported to provide a "bright line" standard for its modified written description doctrine. The bright line test bristled with the language and baggage of chemical cases: "An adequate written description of a DNA . . . 'requires a precise definition, such as by structure, formula, chemical name, or physical properties.'" Lilly, at 1566. That bright line test, however, hit a brick wall in the Enzo case. Enzo Biochem, Inc. v. Gen-Probe, Inc., 285 F.3d 1010 (Fed. Cir. 2002). The specification of the DNA invention in Enzo, of course, did not feature a "structure, formula, chemical name, or [description of] physical properties." Instead, the inventor had merely deposited a sample of the invention for inspection. Therefore the original panel of this court invalidated the patent under the Lilly standard for written description validity. Id. at 1023-24. A few months later, in response to an outcry in the patent bar, that panel withdrew its opinion and scuttled the "bright line" Lilly test for written description invalidity. 323 F.3d 956 (Fed. Cir. 2002).

6

Since then, this court has searched for a proper standard for its revised and evolving written description doctrine. For instance, the recent Capon case illustrates the impossibility of finding a standard that measures the sufficiency of the disclosure in a specification by comparing two parts of that same specification. Capon v. Eshhar, 418 F.3d 1349 (Fed. Cir. 2005). In Capon, the United States Patent and Trademark Office's ("the USPTO's") Board of Patent Appeals and Interferences (the Board) rejected a claim to a chimeric DNA invention under the bright line Lilly test. In the words of the Board, "the parties' claim is not described in their specifications . . . by reference to . . . the structure, formula, chemical name, or physical properties of many protein domains." Capon, 418 F.3d at 1355. As in Enzo, this court adopted the questionable Lilly doctrine but rejected its equally questionable test. Capon, 418 F.3d at 1357-59 In explaining its ruling, this court opined:

> The descriptive text needed to meet [the evolving written description requirement] varies with the nature and scope of the invention at issue, and with the scientific and technologic knowledge already in existence. The law must be applied to each invention that enters the patent process, for each patented advance is novel in relation to the state of the science . . . [T]he law . . . will vary with differences in the state of the knowledge in the field and differences in the predictability of the science.

Capon, 418 F.3d at 1357. That passage needs translation. In brief, it says: "Bring your specifications to the Federal Circuit and we will tell you if they contain sufficient descriptions." Like the rest of the Capon opinion, that passage does not articulate a standard, let alone a neutral standard applicable to all forms of technology, but instead recites some generalities that apply to all inventions and all disclosures ("varies with the nature and scope of the invention," "each patented invention is novel," "will vary with

7

differences in the state of knowledge in the field," and so forth). In <u>Capon</u>, the Federal

Circuit went on to "clarify":

> The "written description" requirement states that the patentee must describe the invention; it does not state that every invention must be described in the same way . . . .
>
> It is well recognized that in the "unpredictable" fields of science, it is appropriate to recognize the variability in the science in determining the scope of the coverage to which the inventor is entitled.

<u>Capon</u>, 418 F.3d at 1358. Once again, those explanations, majestic in their generality,

explain nothing and certainly supply no standard for drafting a specification to comply

with the written description invalidity doctrine.

The illogic of the new written description test—measuring the sufficiency of a

specification's disclosure by weighing one part of the specification against another—

may doom any hope of this court ever devising a neutral test or resolving the tension

with <u>Phillips</u>. When all else fails, as the new written description test has, consult the

statute. The statute sets the standard for measuring sufficiency of disclosure: "The

specification shall contain a written description of the invention, and of the manner and

process of making and using it, in such full, clear, concise, and exact terms as to enable

any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112, ¶ 1. In

sum, the statute sets forth the reliable enablement standard to measure sufficiency of

disclosure.

## II.

Besides illustrating the tension with <u>Phillips</u>, <u>Lizardtech</u> illustrates the imprecision,

to say the least, of the revised written description doctrine. As might be expected, this

court provides little or no guidance about the standard it uses to decide that the disclosure was "inadequate."

Lizardtech's two clear statements of written description law, "[the written description must establish] that the patentee invented what is claimed," Lizardtech, 424 F.3d at 1345 and, "an originally filed claim can provide the requisite written description," id. at 1346, are relegated to bookends surrounding an enablement-based application of the new written description doctrine. Thus, after explaining that 35 U.S.C. § 112, ¶ 1 has two separate requirements, Lizardtech goes on to explain that, "[t]hose two requirements usually rise and fall together." Id. at 1345. Lizardtech further unites the requirements of paragraph 1, explaining:

> Whether the flaw in the specification is regarded as a failure to demonstrate that the patentee possessed the full scope of the invention recited in claim 21 or a failure to enable the full breadth of that claim, the specification provides inadequate support for the claim under section 112, paragraph one.

Id. Far from explaining a neutral standard for applying written description, Lizardtech seems to fall back on enablement, using the latter as a proxy for the former. See id. ("[A] recitation of how to make and use the invention across the full breadth of the claim is ordinarily sufficient to demonstrate that the inventor possesses the full scope of the invention, and vice versa.") That was expected. See Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1326 (Fed. Cir. 2003) (Rader, J., concurring) ("With some understanding of the difficulty and redundancy of the Lilly rule, the Federal Circuit has begun to convert it into the enablement doctrine with a different label."). But see id. at 1327 (Bryson, J., concurring) ("[T]here is no question that Ruschig and subsequent decisions have held that written description and enablement are separate statutory

9

requirements, and that written description is not simply a facet of enablement."); In re Curtis, 354 F.3d 1347, 1357 (Fed. Cir. 2004) ("[C]onclusive evidence of a claim's enablement is not equally conclusive of that claim's satisfactory written description").

Perhaps even more troubling than its lack of clarity about the proper test for written description, Lizardtech appears to engage in a written description analysis that is not technology neutral. Thus, the opinion explains that the written description requirement prevents an inventor of a specific fuel-efficient engine from generically claiming that engine. The only logical inference that can be drawn from the hypothetical is that claims must not exceed the disclosed embodiments. Is a claim reciting a "fastener" invalid because its specification only recites a screw? If not, is the difference based on some distinction between fuel-efficient engines and fasteners? Or is the difference found in the label "expansive claim language"? Thus, Lizardtech concludes:

> [A] patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed.

Lizardtech, 424 F.3d 1346. When did the statute's requirement of providing an enabling description of the invention, the very objective of our patent laws, become a "mere" act that renders a claim invalid under the now-fungible requirements of section 112? In fact, this court in Lizardtech has not explained the standard that makes these claims "expansive" and invalid as opposed to merely broader than the enabling embodiment, especially in light of Phillips. Thus, while members of this court have expressed optimism that future decisions would clarify written description, see University of Rochester v. G.D. Searle & Company, Inc., 375 F.3d 1303, 1327 (Fed. Cir. 2004) ("Future panel opinions may provide the necessary clarity.") (Dyk, J., concurring in

10

denial of en banc review), the law is only becoming murkier. In fact, this court's written description invalidity opinions are now raising doubt in areas beyond the confines of that doctrine.

### III.

Finally, it is apparent that a significant number of Federal Circuit judges agree that this court's evolving written description doctrine needs clarification. See Rochester, 375 F.3d at 1304 (Newman, J., dissenting from the denial of rehearing en banc); id. at 1307 (Gajarsa and Linn, JJ., joining Rader, J., dissenting from the denial of rehearing en banc); (Dyk, J., concurring in the denial of rehearing in banc) ("My vote to deny en banc review, however, should not be taken as an endorsement of our existing written description jurisprudence."); Moba, 325 F.3d at 1328 (Bryson, J., concurring) ("Perhaps the entire line of [written description] cases stemming from Ruschig is wrong, and perhaps we should at some point address that question en banc. I take no position on that issue at this juncture."). However, it is equally apparent that the court is in no hurry to clarify the issue. See Rochester, 375 F.3d at 1304 (denying petition for rehearing en banc); Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 970 (Fed. Cir. 2002) (denying petition for rehearing en banc). As this court's case law creation strays farther from the statute, its application only gets more strained. Meantime district courts must attempt to reconcile the inconsistencies between Phillips and the progeny of Lilly, such as Lizardtech. From my perspective, this court should not postpone further en banc reconsideration of its evolving written description doctrine.